## JUSTO AMSTERDAM ET AL.

*v.*

## LINO PUENTE ET AL.

---

Ponce, Equity, No. 231.

1. The making of a foreign consul a party defendant, when the facts alleged show him to be not a necessary party, will not, of itself, confer jurisdiction on the Federal court.

2. Neither will the mere averment of a constitutional question.

3. This court has no jurisdiction of a case which is, in effect, a probate proceeding to administer the estate of a deceased person, and this is so even when the parties are of diverse citizenship.

4. Such a case is not a controversy within the meaning of the acts defining the jurisdiction of the court.

5. Persons claiming to be heirs of the deceased, but whose status as such

has not been adjudicated, have a full and adequate remedy within a probate proceeding instituted in the local courts.

6. In such a case it is immaterial that the probate proceeding was not begun until after the filing of the case in the Federal court.

**Opinion filed March 10, 1908.**

---

*Messrs. Harry P. Leake* and *W. Vincent Robbins,* solicitors for plaintiffs.

*Messrs. Tord, Toro, & Canales,* solicitors for defendants.

RODEY, Judge, delivered the following opinion:

The bill of complaint herein was filed on the 28th day of February, 1908, in the Ponce division of this court. A subpœna in chancery thereunder, together with a copy of the bill, was served upon the respondent Felix Puente on the 2d day of March thereafter, the marshal returning that the other respondent, Lino Puente y Compostizo, was not to be found in this district. On said same 2d day of March, in addition to the service of the copy of the bill of complaint and the subpœna aforesaid, there was served upon the said Felix Puente a notice signed by Messrs. W. V. Robbins and H. P. Leake, solicitors for complainants, notifying respondents that on the 7th day of March following, at 9:30 o'clock in the forenoon, or as soon thereafter as counsel could be heard, at the courthouse in San Juan, complainants would make application to this court for a temporary restraining order, thereafter to be made permanent, against the said respondents and all their agents and bailees, preventing them from in any manner meddling with

Amsterdam v. Puente. [1]

the estate or property mentioned and referred to in the bill, and for the appointment of a receiver therefor.

The bill is a peculiar one. It sets out that the three complainants are the recognized natural children of one Lazaro Puente y Compostizo, and many affidavits are filed as exhibits to the bill, tending to show that this is the fact. It further sets out that the said Puente died a few days previous to the filing of the bill, at said Ponce, leaving a large estate in cash and other personal property, as well as realty in Porto Rico, and probably a large amount of money in foreign countries, and that the respondent Lino Puente is his brother, and lives in Spain, and Felix Puente is his nephew, and is in Porto Rico, and that the said nephew, together with the Spanish vice consul, took possession of a large amount of cash belonging to the estate, and that the said nephew is about to remove all of the same from the island of Porto Rico as soon as he can get possession of it. The bill prays for an injunction and the appointment of a receiver and asks for general powers for the receiver to collect debts, borrow money, conduct plantations, gather the estate, etc. That after all of this and all other things necessary in the premises have been done, they pray for a decree finding and declaring that they are heirs by force of law of their said deceased father, and for a decree fixing the amount of their share in said estate, and for the payment of the same to them, either in money or other assets of the estate, etc., etc.

A full hearing was had on the day stated in the notice to the respondents and on succeeding days. Under the treaty of April 20, 1903 (33 Stat. at L. 2105), the court, at the request of counsel for complainants, sent a polite telegram to the vice consul of Spain at Ponce, and both he and the acting consul appeared in open court before us and stated that the deceased was

III. Porto Rico—29.

a subject of the King of Spain, and that, on such fact being brought to the notice of the vice consul, he took witnesses and went to the house of the deceased, and there counted in cash in the man's safe or strong box something over $27,000, and took possession of it, and put his consular seal on the safe containing said cash and all of the other choses in action, deeds, and other papers there found, belonging to the deceased, and has an inventory of all of said property in his possession. He further stated that he at once went with the nephew of the deceased, the respondent Felix Puente, to the local district court of the island, at Ponce, and that said nephew, through his attorneys Tord, Toro, & Canales, filed proper papers in that behalf under the local statute, and that the judge of that court at once made an order appointing a temporary custodian or administrator of the estate, and required a bond of him in the premises, to whom he, the vice consul, after said administrator or custodian shall have qualified, will turn over the cash and other property. Mr. Canales, of counsel for respondents, being present in open court, made the same statement, and both he and counsel for complainants substantiated it by filing transcripts of the record in that behalf from said district court of the island at Ponce. From this transcript it appears that complainants are not mentioned as heirs to the estate at all, and that the heirs besides respondents are alleged to be two sisters and a brother of deceased, and four children of a deceased brother.

All of the proceedings in the local district court took place on March 3d and thereafter, or one day after the actual service of the process upon them in this suit, and several days after the filing of the bill.

Mr. Canales, for the respondents, filed no formal pleading in this court, appearing to assume that his oral plea to the juris-

Amsterdam v. Puente.

diction and motion to dismiss, based on the face of the bill and the record, was sufficient; yet a full hearing was had, Harry P. Leake, Esq., of counsel for complainants, appearing for the motion that a restraining order be issued and a receiver appointed, and the said Canales opposing the same.

The consul or vice consul of Spain took no part in the proceeding, but stated that under the treaty and their duty to their government, they are submitting to whatever proper court of the island shall take jurisdiction, their only desire being to do whatever may be proper under the treaty, to protect the rights of the heirs to the estate, who are Spanish subjects. Respondents, through their said counsel, opposed all action by this court in the premises, on the ground that it is wholly without jurisdiction: First, because the deceased is admittedly, and as appears by the bill, a subject of the King of Spain; and second, because, as alleged, the act of 1905 of Porto Rico, Sess Laws, pp. 137 et seq., endows the said district court with full, ample, and complete administration and probate power and jurisdiction, which, under the law, he contends, is exclusive; and that notwithstanding this suit is entitled between complainants who are Porto Ricans, and respondents who are admittedly Spaniards, still the proceeding in question is essentially the administration of an intestate's estate. That therefore it is not a proceeding *inter partes,* which could be either brought originally in this court or removed to this court by a defendant under any law of the United States. He further contends that the Spanish vice consul, under the treaty, was fully empowered to take the action he did, which is purely ministerial, and that in fact he is not made a respondent in the bill, nor could he of right be so made; and that hence the administration of this estate must proceed in the local courts according to the local act.

At the close of the argument, on March 10th, counsel for complainants amended his bill so as to make the Spanish vice consul a formal party and thus to raise such a constitutional question or questions arising under a treaty as will oblige this court to take jurisdiction. We do not think this alters the situation, as the consul is not, in our opinion, a necessary party, and "the mere averment of a constitutional question is not sufficient, if it is so wanting in merit as to be frivolous, to give the court jurisdiction." Farrell v. O'Brien (O'Callaghan v. O'Brien) 199 U. S. 89, 50 L. ed. 101, 25 Sup. Ct. Rep. 727.

Neither of the counsel cited us to the same, but, in our examination of the important questions here involved, in addition to many others, we examined the case of Byers v. McAuley, 149 U. S. 608, 37 L. ed. 867, 13 Sup. Ct. Rep. 906, and Farrell v. O'Brien, supra, and under what we consider the law, as there settled by the Supreme Court of the United States, we are constrained to hold with the respondents that this court, at least for the present, has no jurisdiction to entertain this bill, and that the complainants have an adequate and complete remedy by appearing in the local court in response to the summons which it undoubtedly will issue, or to appear there of their own volition, have themselves declared heirs, if they can, and make all necessary motions and applications for the protection of the estate, pending administration.

We fully appreciate the importance of this ruling and its effect upon the jurisdiction of this court, but examination of the two cases referred to and of the vast line of authorities cited in them, as well as the language used by Mr. Justice White of the Supreme Court of the United States in the opinion in Garrozi v. Dastas, 204 U. S. 73, 51 L. ed. 376, 27 Sup. Ct. Rep. 224, as to the enlarged jurisdiction of this court, and

Amsterdam v. Puente.

also many authorities cited in the digest, fails to convince us that we have any right to proceed; and in such case the doubt must be resolved against the power. These authorities establish beyond question, we think, that Federal courts have no original jurisdiction in respect to administration of decedents' estates. We are further of the opinion that they cannot, by entertaining jurisdiction for complainants, who have not yet themselves been declared heirs to the estate by any court, of a suit against what may be outsiders, or as, in this case, against an alleged brother and nephew of the deceased who have not yet been declared by any court to be heirs at all of the estate, or by making the Spanish vice consul a party, draw to this court the full possession of the property of the estate, or invest it with the authority of determining all claims against the estate, which, in the last analysis, is really what complainants are here attempting to do, and which cannot be avoided if this court takes jurisdiction at this time.

There is no question but what proceedings were commenced in this court before they were in the insular court; nor is there any question but what respondents and their attorneys had full notice of such proceedings, and that they failed to notify the insular court of that fact when they applied to it for the appointment of a temporary administrator; and if we believed we had jurisdiction at all, we would, because of that fact, assert and keep jurisdiction of the whole matter in this court. If we believe this was a suit between parties, because unquestionably the complainants are Porto Ricans and the respondents are Spaniards, we would, on account of this diverse citizenship, entertain the suit; and were the treaty between the United States and Spain, above referred to, in any proper manner really involved, that fact might induce us to entertain the suit.

However, we cannot see that the bill here is anything more than an effort to induce this court to take jurisdiction of this cause and draw the property and the administration of this estate wrongfully away from the insular court, which has power to, and is, proceeding to ascertain who the heirs are and to administer upon the estate according to law. These complainants have a perfect right to go into the insular court, and they have no right to come to this court at all unless they can properly and directly attack respondents, who are foreigners, or unless some treaty or constitutional question is involved. We do not, at the present time, see what they are attacking these respondents for. The latter have done nothing save to appear in the local court and call for an administration of the estate. Supposing this court should take jurisdiction here, and put its receiver in charge, how does it know but what there may be half a dozen Porto Rican heirs to the estate, and who would then have to come before this court to have themselves declared heirs, etc.? How can we know but what there are many creditors of the estate, who are also Porto Ricans, and who would have to come to this court to assert their claims? This court would then be settling the rights of heirs to this estate among a lot of Porto Rican between themselves, and that, as stated, we think it has no power to do. See Farrell v. O'Brien and Byers v. McAuley, supra.

The bill, as amended, will therefore be dismissed with costs, including the expenses of the trips of the vice consul of Spain in coming at the request of the court from Ponce to San Juan, and which expenses counsel for complainants must see to it are paid at once.